WILLIAM HENDRIE v. THE CANADIAN BANK OF COMMERCE.

*Contract for railroad construction—Notice to sub-contractor—Possession
of working outfit—Chattel mortgage on tools.*

A railway contractor made a sub-contract for building a section of road
and stipulated therein that if the work should not be carried on with
sufficient force and energy the chief engineer of the road might, on
giving written notice to the sub-contractor, declare the sub-contract
forfeited, or might take possession of the work and carry it on at
the sub-contractor's expense and for his benefit. *Held,* that as the
chief engineer was a stranger to the agreement he could not be com-
pelled to give the notice, and that a written notice from the con-
tractor to the sub-contractor was sufficient where the engineer had
already orally notified both that the work was not advancing satis-
factorily.

Where a contract for railroad construction provided that if the work did
not go on fast enough the chief engineer of the road could take
charge of it and carry it on at the contractor's expense and for his
benefit, *it seems* that he would be entitled to take the teams and tools
of the contractor for the purpose, especially if there was not time
enough to get others. Whether the contractor would have a right
to so mortgage them as to prevent this.—*Q.*

Where chattels have been mortgaged to secure the payment of promis-
sory notes, the notes must be put in evidence in defense to an action
of replevin for the chattels, in order to establish the mortgagee's
right of possession as against that of a person otherwise entitled to
it. But as against a person wrongfully trying to obtain possession
of them, the prior possession of the mortgagee would be enough.

Error to Otsego. Submitted Oct. 11. Decided Oct. 31.

REPLEVIN. Plaintiff brings error. Affirmed.

*Brennan & Donnelly* and *John Atkinson* for appellant.

*Conely, Maybury & Lucking* for appellee.

MARSTON, J. The plaintiff was principal contractor with
the Michigan Central Railway Company for building the
extension of the Jackson, Lansing & Saginaw road from
49 Mich.—26

Gaylord to Mackinaw. On the 11th day of November, 1880, he entered into a written contract with Angus D. McDonald, under which the latter was to construct and finish a part of the work to the satisfaction and acceptance of the chief engineer of the road. In May, 1881, Hendrie, upon the claim that McDonald was not prosecuting the work with sufficient force and energy to complete the same by the 20th of June, the time limited in the contract, undertook to take charge of the work, employ men and do whatever was necessary to complete the same at the expense of McDonald, and on attempting to do so he found the camps, tools and equipages in the possession of the defendant bank by its agent, claiming under a chattel mortgage given it by McDonald. The plaintiff then commenced this action of replevin to recover possession of the camps, tools, etc. Upon the trial under the rulings and charge of the court the plaintiff failed to recover, and the bank, waiving a return of the property, recovered a judgment for the value thereof.

The record is not a satisfactory one, and as there must be a new trial, we deem it the better course to point out the rights of the respective parties under the written instruments, as a guide for the future, rather than to take up the several questions raised, as we think there has been an evident misapprehension by both parties in this case.

Under the contract between the plaintiff and McDonald, the material part of which will be found in a note herewith,* it was provided that in case the work was not prose-

---

*Articles of agreement, made and concluded this eleventh day of November, A. D. one thousand eight hundred and eighty, between Angus Donald McDonald, Barrie, Ontario, of the first part, and William Hendrie, of Hamilton, Ontario, of the second part, witnesseth : That for and in consideration of the payments and covenants hereinafter mentioned, to be made and performed by the said party of the second part, the said party of the first part doth hereby covenant and agree to construct and finish, in the most substantial and workmanlike manner, to the satisfaction and acceptance of the chief engineer of the Jackson, Lansing & Saginaw Railroad Extension, all the gradation and such other work as may be required on sections 1 and 2 of said road; the said work to be begun, carried out, and finished as described in the specifications and general provisions following hereto, and agreeably to the directions, from time to time, of the said chief engineer, or his assistants, on or before the twentieth day of June, in the year one thousand eight hundred and

cuted with such force as the chief engineer should deem
adequate for the completion of the work within the time
specified, he could adopt one of two courses, viz.: the chief
engineer, or such person as he might designate, could employ
such number of laborers as he might deem necessary, pay

eighty-one, time being declared to be material and of the essence of this
contract.

It is further agreed and understood that the work embraced in this
contract shall be commenced within seven days from this date and prose-
cuted with such force as the said chief engineer shall deem adequate to
its completion within the time specified; and if at any time the said party
of the first part shall, upon receiving written notice from said chief
engineer, refuse or neglect to prosecute the work with a force sufficient
in the opinion of the said chief engineer for its completion within the
time specified in this agreement, then and in that case the engineer in
charge, or such other agent as the said chief engineer may designate,
may proceed to employ such a number of workmen, laborers, and over-
seers as may, in the opinion of the said chief engineer, be necessary to
insure the completion of the work within the time hereinbefore limited,
at such wages as he may find it necessary or expedient to give; pay all
persons so employed, and charge over the amount so paid to the party of
the first part as for so much money paid to said party of the first part
on this contract; (or the said chief engineer may at his discretion, for the
failure to prosecute the work with an adequate force, for non-compliance
with his directions in regard to the manner of constructing it, or for any
other omission or neglect of the requirements of his agreement and speci-
fications on the part of the party of the first part, declare this contract,
or any portion or sections embraced in it, forfeited;) which declaration
and forfeiture shall exonerate the said party of the second part from any
and all obligations and liabilities arising under this contract, the same as
if this agreement had never been made; (and the said party of the first
part shall give up possession of the works to the party of the second part
within 24 hours after he shall have been notified in writing that the con-
tract has been forfeited;) and the reserved percentage of ten per cent. upon
any work done by the party of the first part may be retained by the said
party of the second part until the full performance of the work, and the
complete settlement and adjustment of all matters arising thereunder;
and in case of any default or defaults by the said party of the first part
in any of the previous covenants or stipulations in said contract on his
part made and entered into, for which the party of the second part shall
be entitled to claim damages, such reserved percentage, or so much
thereof as shall be necessary, shall be applied upon and towards the pay-
ment of such damages when the amount thereof shall be ascertained and
determined. And it is mutually agreed and distinctly understood that
the decision of the said chief engineer, for the time being, of the said
Jackson, Lansing & Saginaw Railroad Extension, shall be final and con-
clusive in any dispute which may arise between the parties to this agree-
ment, relative to or touching the same; and each and every one of said
parties do hereby waive any right of action, suit or suits, or other remedy
in law or otherwise, by virtue of said covenants, so that the decision of
the said chief engineer shall, in the nature of an award, be final and con-
clusive on the rights and claims of said parties.

the persons so employed, and charge the amount so paid against McDonald as money paid under the contract; or he might declare the contract forfeited. In case he declared the contract forfeited Hendrie was thereafter exonerated from all obligations and liabilities arising thereunder; and the first party, McDonald, was to give up possession of the work to Hendrie after receiving notice of such forfeiture. In either event a written notice from the chief engineer to McDonald was necessary in order to give the right to employ men or declare a forfeiture.

The only written notice was one given by Hendrie, dated May 16, 1881, which will be found in a note herewith.* This notice it is claimed was not sufficient because it did not emanate from the proper party, the chief engineer.

It appeared on the trial that the chief engineer had on several occasions informed McDonald that he was not pushing the work with sufficient rapidity, and that at a meeting held in Detroit in May, at which the engineer was present, Hendrie was informed of the condition of affairs and that it was absolutely necessary that something should be done by him, and the engineer also testified that " the question of pushing the work was a matter between the railroad company and William Hendrie, so I had no particular communication with Mr. McDonald at all."

The object of a written notice was to inform McDonald that in the opinion of the chief engineer the work could not be completed within the time specified, and if upon receiv-

---

*DETROIT, MICHIGAN, May 16, 1881.

*Mr. A. D. McDonald, Contractor*—Sir: I beg to notify you that, as you have failed to prosecute the work under your contract with me on sections 1 and 2 of J. L. & S. Ry. with a force and diligence sufficient for its completion 1st of July coming, I will take charge of your work on Wednesday morning, under said contract, and proceed to employ such a number of workmen, laborers, and over seers to do whatsoever else may be necessary to ensure the completion of the work within the time hereinbefore specified; and all wages, therefore, paid to persons thus employed for said purpose, I will charge over to you for your account, an accounting for the same between you and me to be had hereafter, according to the provisions of said contract.

Mr. Wetherston will represent me, and take charge of the said work, as above mentioned, in my behalf.        Yours,        WM. HENDRIE.

ing such notice a sufficient force was not put on by McDonald, then that men might be employed and put on.

The engineer was not a party to this contract, nor was he in the employ of either of the parties thereto. He was in the employ of the railroad company and it was therefore his duty to see that the work was properly done and, if possible, at the time specified; and if there was likely to be a failure, as an employee of the company it was his duty to look to and notify the party who had entered into a contract with the company to do the work, leaving it with him to look to his subcontractors. He undoubtedly could have given the notice required by this contract, but was under no obligation to do so, and could not be required by Hendrie so to do. Neither could the engineer under this contract be required to employ laborers, keep an account of their time, pay them their wages or designate or appoint a third person for such purpose. These were all matters not pertaining to his duties as an employee of the railroad company, and Hendrie and McDonald could not by the terms of their contract require him to perform such services. The essence of this provision in the contract was, that both these parties were willing to, and did, leave it with the engineer to determine whether the work was progressing with sufficient rapidity to complete the same within the contract time. To this extent he would be but performing a duty he owed the company, and when he gave oral notice to McDonald and Hendrie he had done all that could be required of him. To hold that this contract must have been literally followed would have given the contractor the means of evading its provisions by absenting himself so that no notice could have been served upon him. Such could not have been the intention of the parties, and we must hold, therefore, that the written notice given by Hendrie, after the oral notices given by the engineer, was sufficient. No question can arise concerning McDonald's intentions after the date of this notice, as it appears that the bank took possession of all the property and was about to stop the work, and this apparently with McDonald's full knowledge, showing that he did

not intend to put on a larger force or even maintain the force he then had.

The notice given did not attempt to declare the contract forfeited, so that the rights of the parties under such a contingency need not be considered.

The notice given was that Hendrie by his agent would take charge of the work, employ laborers and do whatever else might be necessary to insure the completion of the work within the specified time ; and that the wages paid to persons so employed would be charged over to McDonald, and that an accounting would afterwards be had as the contract provided. All this was in strict accord with the contract, and the contract clearly contemplated that no change should be made, other than to employ and put on an additional force. The force which McDonald' may have had working was not to be discharged ; the teams, the tools and other things in actual use were to be retained, and added to if necessary. In other words it was not a forfeiture or abandonment of the work by McDonald, but a continuation of his work, with an additional force, at his expense and for his benefit ; and the possession taken of the tools, implements, teams and such other things as were in use, was not and would not be an adverse possession, but would be McDonald's possession and for his use and benefit. This was the right contemplated and given by the contract, and is the only construction that can be given it, at all likely to effectuate the intention of the parties and protect them in their respective rights. What both parties sought was a completion of the work at a given time, so that no liability for damages against either might arise, and if the right given to employ and put on an additional force, gave McDonald the right to withdraw the force of men then in his employ, and at the same time take with him the teams and tools then in use, then the right given in this case would have been a barren one and would have defeated the very object which the parties had in view in the adoption of this provision. The contract must be construed in the light of the surrounding circumstances, and in the very limited time remaining for the completion of the

work, it is very clear camps, teams, carts, tools and supplies sufficient could not have been obtained at the time and place required to complete the work.

In reference to the rights of the mortgagee. It appears that this mortgage was given to secure the payment of certain promissory notes, and that they were not offered in evidence. Had Hendrie in attempting to gain possession of this property been a wrong-doer, perhaps no proof thereof would have been necessary, as the prior possession by the bank would, as claimed, have entitled it to recover. As, however, Hendrie was entitled to the possession it is clear the bank could only succeed by showing a better right, and this was not done.

This mortgage purports to have been executed on the 14th day of May, 1881, two days prior to the date of the notice given by Hendrie, and it may admit of some doubt whether, under the contract of Nov. 11th between McDonald and Hendrie, McDonald could, by giving a mortgage on this property, prevent Hendrie from using the same in the completion of the work. If McDonald could not himself do so, could he give the Bank any greater powers than he himself possessed. As against McDonald the Bank could take possession, but could it as against Hendrie, in a case where McDonald could not? This at least is worthy of consideration hereafter.

As the trial was not in accordance with these views the judgment will be reversed with costs, and a new trial. ordered.

The other Justices concurred.